Good afternoon. We have one case that's been carried over from a prior sitting. Pellegrino v. USA Transportation Security Administration, etal. Numbers 15-30, or number 15-3047. Mr. Thompson, Mr. Scherer. May it please the court. My name is Paul Thompson and I am court appointed amicus on behalf of the appellants, Mr. Waldman and Ms. Pellegrino, limited to the issues under the Federal Tort Claims Act. I'd like to reserve three minutes of my time. Thank you. Could I ask you, how much of your argument depends on the use of the disjunctive rather than conjunctive in 2680H? Assuming that this is a search. Yeah, I think a lot of the argument depends on the use of the disjunctive. The statute says execute searches to seize evidence or to make arrests. A lot of the government's argument here is that transportation security officers aren't law enforcement officers somehow because they don't have the panoply or the menu of things within their power, such as arresting, such as carrying a firearm, such as seizing evidence. But they do have and they are statutorily empowered to search. And that's 49 U.S.C. 44901A. But even with the disjunctive, when we look at the language that's used, this is not conduct or perform searches. It's execute searches. And when we consider that language, which really sounds in the language of warrants, of criminal law, and consider in pari materia where we have the seizure of evidence, again, those are terms of art in criminal law as well as conducting arrests. Doesn't that tell us that even with the disjunctive that the category of person that's describing is involving criminal law enforcement? Well, I think, first of all, that transportation security officers, when they are conducting the searches, they are looking for prohibited items or items that are in violation of federal law. For instance, it's against the criminal law of the United States to carry a loaded firearm on a plane. And they are instructed and trained in identifying those things, explosives, items like that, which are violations of the criminal law. So they are searching for violations of the criminal law. We read the word execute as to carry out, to carry out a search. And I don't think it can be tied to just a warrant power, because if you recall from the legislative history, what brought about this whole statutory revision were warrantless searches, where federal officers went into people's homes without warrants, arrested them without probable cause. And it resulted in Congress wanting to create a remedy for people when they encounter with a federal official who had the power to search, who had the power to seize, or who had the power to arrest, resulted in a violation of their rights. How is the nature of that search any more criminal than other types of administrative searches, the meat inspector, or the inspector of game or wildlife, even a books and records inspector? We've talked about in Grayhill and Hartwell the nature of the search here as being an administrative search with characteristics that are very different than even those involved with the Terry stop. So how would you, you're describing this as in the nature of a criminal search, but is it distinguishable from any of those other administrative searches? And if you're asking us to create some kind of exception or carry over the law enforcement proviso to this type of search, why wouldn't that blow wide open a hole in sovereign immunity, something we'd expect Congress to be more explicit about if that's what they intend to do? I don't think this would blow open a hole at all in sovereign immunity. And part of the reason is I think that search has a commonly defined term. This court has held that an airport checkpoint review and screening and pat down of a person is a search. This language in the statute is plain and clear. It says execute searches, and I think they've done that. Now let me address the meat inspector or the OSHA officer or the EPA officer. The list could go on and on and on. And I think the answer to that is under our reading of the statute. If the person is in office in the United States who is empowered by law to either conduct a search, to seize evidence, or to make an arrest, that that person would fall under this statute. And here's why. What Congress was concerned about is the abuse by a federal official of one of these awesome powers. There are few powers as awesome in our federal system as the power to search an individual's bags or his or her person or to seize evidence or to arrest them. And Congress was focused like a laser beam on those kinds of abuses. So I know all of those cases aren't before you today, but I appreciate that you are concerned about what the implications would be here. And I think that if Congress has delegated to a federal official the power to conduct a search or to seize evidence or to make an arrest, that those would fall under the purview of the statute. Now let me address floodgates for a minute. Is that searches of, would you limit it to searches of persons or you would say an officer who can conduct any kind of search? Searches of compartments, searches in FDA inspection searches, for example. So I think some of the cases do talk about searches in this context and say, for instance, under the Transportation Security Officer context, they say, these aren't searches because they're consensual. This court has rejected that reasoning as to airport checkpoints and has said that these are not consensual searches, that they are searches under the Fourth Amendment that don't turn on consent. And when you're in that process, you cannot get out of it as it escalates. There could be an argument that in some context certain regulatory searches are essentially consensual, but I don't think that issue is really before you right now. Our reading is that the... We could have the United Circuit saying it was consensual. We haven't actually held squarely that it's not consensual, right? Well, I think that in Hartwell and in George, the court in a footnote in Hartwell, and then it gets picked up in the text in George, and maybe the George versus Rehal, said that these searches don't depend on consent. And as you recall, there was an escalation in the Hartwell case, and the court addressed the idea of whether or not Mr. Hartwell could have just walked out of that. And the court said this does not turn on whether or not it's consensual, because if it did, it would essentially allow terrorists to walk into the airport, test the system, and then walk out when they found the vulnerabilities in the system. So I think here you have a search that's not consensual. It is called a search under the TSA's own statute. It's called a search under the TSA's own regulations. It's called a search under their directives, and it was called a search by the officers in this case in the police report that they fill out at the appendix 215. And I think the plain meaning of this statute, an officer of the United States empowered by law, which they are, to execute searches needs to comply in this context. Say we agree with you it's a search. Why are these officers? And why wouldn't we look to the definition of 2104, for example? So I think there are officers, I think first of all this statute has provided its own definition. As the statute says, for the purpose of this subsection, investigative or law enforcement officer means any officer of the United States. And then it goes on to define the functions that that person must perform. So this subsection provides its own definition, and I think there's a problem if you look to 2104 or another statute that's been cited, 114P, which is the law enforcement officer statute under the Transportation Security Act. The first problem you have is you have a statute here that says we are providing our own definition, and you're looking to another statute for the definition. But the definition it provides is any officer, and then it goes on to describe characteristics of that officer. We still need a definition of officer, and don't we have that in the U.S. Code in 2104? As well as in the Federal Tort Claims Act itself, in its definition section, which in describing government employees talks about employees or officers. That is, even in the FDCA, it seems to be making a distinction between officers and employees. Are you asking us to elide that distinction? I don't think you have to, because in this case we know they are officers. They were reclassified as such in 2005, and they are transportation security officers. They wear a badge that says United States officer on it, and they are held out to the public as officer. 2104, let me address that for a minute. I think one of the problems you have if you go with 2104 is, first, it eviscerates for the purpose of this subsection. Second, the definition there is somewhat under-inclusive. For instance, postal officers are excluded from the definition of officer under 2104. There is case law out there that says postal inspectors clearly have the panoply or menu of law enforcement powers that we want to apply under this statute. In addition, 2104 requires the appointment by the head of the executive department. DEA, FBI, Transportation Security Administration are not executive departments. It is the Department of Justice or the Department of Homeland Security. All of those do fall under DOJ, right? They all do fall under DOJ, so they would need an appointment by the attorney general in order to be properly designated as an officer under that statute. Even transportation security officers, when they get the special designation of law enforcement officer, which this court, as it talked about in Vanderklok, and I know it didn't rule on that issue in Vanderklok, but it talked about how maybe there are instances when people have that special law enforcement officer designation. Maybe that's enough? Because they'd be appointed by the head of the TSA and not the head of DHS, they probably aren't officers under 2104. So any reference to another statute runs into a lot of problems. One, it's potentially under-inclusive, and it takes out people that you might think have the whole panoply of these law enforcement powers. Two, it eviscerates the term for the purposes of this subsection under 2680. I'm sorry. You agree that these TSA officers or employees do not have the power to seize evidence or to make an arrest? I would agree with that. Why is it significant, or why isn't that significant? Now, I realize you have the disjunctive argument, but is there any other reason why that is significant here? I think the disjunctive argument is really the dispositive and the important one here. I think that if you were requiring this person to have all of the indicia that you look at as kind of an FBI agent, the power to search, the power to seize, the power to arrest, then really, and you viewed that in the definition of investigative or law enforcement officer, then the entire half-end of this sentence is just completely superfluous. But what about if you look at 44901? It says the screening shall take place before boarding and shall be carried out by a federal government employee. It doesn't say by a law enforcement officer. It doesn't even say an officer. Now, of course, it cites back to 2015, but I don't find that all that helpful either. But it is the statute that empowers individuals by law in the TSA to conduct searches, and it references, I believe, 2105, which defines an employee to include an officer as well. And then the secretary, or the undersecretary at the time, or the head of the TSA, did reclassify these folks as officers. So the fact that it merely refers to as an employee, I don't think helps resolve this one way or the other, because employees encompasses officers. It also dovetails back with 2105. Well, yeah, I meant to say 2105. An officer and an individual who is appointed in a civil service engaged in the performance of a federal function under the authority of law and so forth, that's pretty vague language. But it encompasses within it an officer. So the fact that these folks are called transportation security officers, they are within the ambit of an employee under 2105, and employees are who have been initially empowered to conduct these searches under federal law. What is the meaning, then, of the passage that says that the undersecretary shall have authority to designate at least one law enforcement officer with all of these functions that we traditionally associate with law enforcement? I think it means what it says. The secretary, the undersecretary, or the head of the TSA, has the power to give people a title under the TSA known as law enforcement officer. And with that comes along retirement benefits, it comes along certain authorities to carry a gun, to arrest, to seize evidence, and to search. The problem you have with that is this statute under the Federal Tort Claims Act doesn't require all of those things. It just requires one of those things. It is an investigative or law enforcement officer, which is defined, then, as any officer, which the Supreme Court in Ali held means officer of whatever kind. And then it goes on to say who is empowered by law to conduct a search, to seize evidence, or to make an arrest. So the fact that the transportation security administrator has the ability to give someone all of those powers doesn't answer the question about whether these officers have one of those powers. And they most certainly do. So how do we distinguish officer from employee? It seems like you're superimposing the concept of employee onto the term officer in the statute. Well, certainly I think an officer is one who has been imbued with certain trust and authority to carry out a federal function. And even under 2104, there's not a real clear definition of what the different federal functions are that are performed. But I think the nice thing about this statute is it takes some pretty important federal functions, searching, seizing, or arresting. And I think the court need not decide today what that definition ultimately is because these folks are, by law, designated as officers under the Transportation Security Act and by the TSA administrator. Well, when you say designated, you mean they've been given that label. They've been given that title. In the context of the statute for TSA, it seems to be making a clear distinction between employees, on the one hand, and law enforcement officers in 114P, on the other. It does. It says nothing, however, about other officers. And it says nothing about investigative officers. And the Federal Tort Claims Act talks about investigative or law enforcement officers, which it defines broadly as any officer. So I think it's clear that these folks are an officer. What in 114 also, in the earlier sections, E and F, gives the Transportation Security Administrator the ability to designate training, to designate kind of the scope of employment, to set forth standards to hire. And within that authority, I believe, is the authority to designate these people as officers, which has not, by the way, been challenged that we could tell since it happened in 2005, other than Congress in 2011 trying to take that title away in something called the Strip Act, which never passed, which suggests there is some gravitas to this title of officer. You'd agree, though, that the Undersecretary of Transportation Security is not the head of an executive agency? I think that's correct, yeah. You said we shouldn't worry about tomorrow in whatever we're deciding today. Well, let's talk a little bit about yesterday, because given what you were asking us to do in our definition of officer, what meaning then would it have in Vanderklok where we said that TSA employees typically are not law enforcement officers and do not act as such? Haven't we crossed this bridge? Well, you have in Vanderklok an analysis of 114P of the Transportation Security Act, and the Court was exactly right there. These are not law enforcement officers under the Transportation Security Act. But I think the question that wasn't answered in Vanderklok is are they any officer of the United States? Are they an investigative officer of the United States? The law enforcement officer designation that exists under 114P only really answers part of the question. But didn't we say that in the context of a discussion about what alternative remedies were available to a business action? That is, whether the FTCA was available? Yeah. The Court said it didn't have jurisdiction ultimately to decide this issue, but it was looking at the ultimate issue of whether they were investigative law enforcement officers under the Federal Tort Claims Act. But nonetheless, it did go into analysis of alternative remedies. You're absolutely right. And it held in that analysis that there were at least some avenues under the Federal Tort Claims Act if a person was designated as a law enforcement officer under 114P. It didn't answer the other question, and it wasn't really posed to the Court, and it wasn't really presented. Could they be investigative officers? Could they be any officer? And there was nothing in the record about the 2005 reclassification of these individuals as officers. So you'd have us have a different definition of law enforcement officer for Bivens actions than law enforcement officer for the FTCA? I would have you have the definition of investigative or law enforcement officer under the FTCA, which is the one that's given, which is any of whatever kind officer of the United States who is given one of these three powers. And here's why I don't think this should worry you. First, this is not going to open up a floodgate of litigation. The Transportation Security Administration actually keeps track of the experiences that people have when they go through airport screenings, and they put the statistics up online in their public database. In 2015, over 700 million people went through screening. They are required, if they have a complaint, to file an administrative complaint with the TSA. Fewer than 200 of those people actually filed complaints with regard to personal injuries, which would be the nature of the claim you'd have for an assault or false imprisonment or false arrest. After they go through the administrative process, then they have to sue. So there's not a flood of litigation out there around this issue. Also, I think this is what Congress was getting at. Congress was looking at a situation where officials in the United States had been given a really awesome power, the power to search or arrest or to seize evidence, and they abused it. Why shouldn't we want a remedy for people who are the victims of that abuse? That's what Congress wanted when it passed this provision. That's why it wrote clear and unmistakable language for this provision, and that's why I submit this provision applies to transportation security officers. If we consider it's the legislative history relevant to intent, doesn't it appear that liability here would be coterminous with that of Bivens? The legislative history says that the proviso is the statutory counterpart to the Bivens case and creates independent liability of the government for the same type of conduct as in Bivens. You're talking about expanding it to a very different type of conduct. Well, I would agree with you that a Bivens remedy is one thing and a federal tort claims remedy is another thing, and you're absolutely right in the legislative history. The legislative history said that the amendment should not be viewed as limited to constitutional tort situations but would apply to any case in which a federal law enforcement agent committed the tort while acting within the scope of his employment or under the color of federal law. So if the court is concerned that there may be instances where people seem to have a federal tort claims act remedy and they don't have a Bivens remedy, I think that's fine because constitutional torts are hard to prove. There are added aspects to it. There's qualified immunity. What Congress was going at here is trying to provide a remedy, a good old-fashioned tort remedy for those who are victims of the most egregious, the most serious intentional torts. And so I think that the court should not be concerned if it feels somehow that it is reading the federal tort claims act in a way that there could be a lawsuit here and you wouldn't have the concomitant or related Bivens action. Thank you very much. Thank you very much. Did you share? Good afternoon. Assistant United States Attorney Mark Shearer on behalf of the Applebee's, including the TSA and all the individual defendants. Let me ask you a question working backwards. Let's assume, not necessarily this case, but there is an egregious violation by a TSO of a person's rights. Maybe it's a pat-down in which there is a sexual element or whatnot that appears to be clear. Is there any remedy against that TSO? There is, Your Honor. In an ultimately very egregious case, the government could choose to deny Westfall certification of that officer and permit the plaintiff to proceed against that individual in state court under tort law. I think that's the easiest answer in a very egregious case that Your Honor mentioned. That would be up to the discretion of the government. It is the government, but there are certainly cases that suggest that the court has review power over Westfall designations to some degree, Your Honor. If the court is concerned that there may ultimately be no remedy for such an egregious case, I don't think that's a foreclosing or requiring an FDCA remedy here. I do want to make clear, Your Honor, that we're not talking about closing off the FDCA completely for the TSA. Obviously, there are still many negligence claims that can be made against the TSA and are made against the TSA every year. We're only talking about intentional torts, which to discuss Mr. Thompson's reference, which I'm not aware of how many are made, but I'm sure that's a very small number of the amount of FDCA claims, which are mostly negligence claims. We're not talking about closing that off. You have viewed these as screeners and characterized the search that way, that is, putting it in the category of administrative search. When we're dealing with this in the day and age that we live in, where because of security concerns we've empowered this group of federal employees to essentially engage in Terry stops without even reasonable suspicion, to engage in physical searches, and this is not as in a typical administrative search context where you're in a highly regulated industry, where it's specialized and with sophisticated businesses that understand why administrative searches are being performed. This is the general public. Why don't we have something that much more closely resembles a traditional police power and should be viewed as traditional law enforcement to the extent that there's ambiguity about the scope of the law enforcement provisor? To answer Your Honor's question, this court in George and I believe First Circuit have also recognized that the Terry concept doesn't work very well when you're talking about an administrative search at an airport. I think it's actually closer to what Your Honor mentioned in terms of the highly regulated industry. Obviously, this is one of the most highly regulated industries where the government itself is conducting the screening at airports. But wasn't the statute that we're involved with here drafted within a few years after Terry came down? Excuse me, Your Honor? Wasn't the statute that we're involved with here drafted a few years after Terry came down? The 1974 amendment, yes, Your Honor, but I don't think that the two are coterminous or that they inform each other. Ultimately, shouldn't we presume that the statute uses Terry's definition of search? I don't believe it does, Your Honor. And you may be right, but why is that? Ultimately, the search that is at issue at an airport, I think as court in George and others have said, is a very particular type of search. You have airline passengers and people who are looking to ship cargo showing up, presenting themselves, and there are certain safeguards that Mr. Thompson mentioned that, yes, it's a different type of search in that you can't then decline to continue to search once you've showed up. But there are all sorts of regulations and procedures that have been put in place. I think it's very different, and I don't think you can equate it to a Terry stop of an officer who has a reasonable suspicion that someone that he observes on the street may be up to no good. Obviously, that person isn't presenting themselves to the officer and suggesting that they may or may not have an issue. I just think it's an unhelpful characterization to say that Terry somehow informs what's a search here. Well, we know it fits the definition of search under the Fourth Amendment. The question is whether when what's the nature of the search authorized, even as an administrative search, is actually a physical search. Why isn't that approaching the type of conduct that Congress was concerned about officers overreaching when it provided for liability in the carve-out of the law enforcement proviso? The definition of search doesn't ultimately, I think, get us where we need to be in terms of what the law enforcement proviso means. In Millbrook, the Supreme Court said that it's not the activity, it's the status of the officer that determines whether they're covered. So once you go down this thicket of what is a search, what is not a search, you get into an area that I don't think this Court needs to reach that the Eleventh Circuit in Corbett said they did not need to reach because ultimately what matters first is who is an officer. In Millbrook, the Court said you look at what the officer's legal authority is, not the particular activity. This Court in Vanderklok, as Judge Krause mentioned, has already at the very least said that most TSA employees are not law enforcement officers, they don't act as such, and that it's only those TSA employees that have been specifically designated with statutory powers that operate like police officers. Although Vanderklok was a Bivens case, was it not? It was a Bivens case that does have along with it the same issues that are at issue in Pellegrino, Your Honor, albeit at different phases at this point. There are, in fact, TSA employees who have been designated as law enforcement officers. Those are federal air marshals. They have all the indicia of law enforcement officers that, as we described in our briefs, have the traditional powers of arresting, searching, seizing, that most police don't have. Good. We have a statutory definition to work with, and it references officer. You point us to 2104, but how do you answer your colleague's point that 2104 is under-inclusive? The government would agree that postal service agents, for example, are also law enforcement officers, right? 2104, I don't think, ultimately answers the question. You have to look at what the individual statutory grant is for each class of officer. That's at issue. Certainly all the cases have looked and ticked off various classes that do fall within the law enforcement proviso. FBI agents, postal inspectors, deputy U.S. marshals, all people who may not carry the title of officer, may not be wearing a badge, may not be called the same thing, but they have very specific statutory grants. If you look at Chapter 23 of Title 18, which empowers various types of investigatory and law enforcement officers, those are the types that permit FBI agents to carry firearms, serve warrants, ATF special agents, again, deputy U.S. marshals. Here you have a group of screeners who have not been so designated. They have no grant of statutory. We're trying to figure out the definition of officer. You're saying there are statutes that talk about those who carry firearms and have these other powers, and those are officers under those statutes, and so we should import that definition. Why are we limited to those who carry firearms as the definition of officer in this context or generally? Congress's intent in applying this law enforcement proviso was to talk about a class of people, and it uses the examples of executing searches. As Your Honor pointed out, executing searches can mean something very different than touching a suitcase or touching a passenger in order to pat them down to see whether they're carrying a firearm. It also talks about seizing evidence and arresting. Those are things that are very connected with traditional law enforcement. In every case that's applied, the law enforcement proviso certainly looks at that class of individual officers determining what their powers are.  Searches also are terror stops. There's different kinds of searches. So I'm not sure that execute, in quotes, is necessarily a term of art here. Whether or not it's a term of art, Your Honor, it informs the type of classes and the status of the officer that we're talking about, I think under Millbrook. Amicus agrees that you need to have a statutory grant. He points to 49 U.S.C. 44901A. That statute is much too thin a read on which to say that a TSA screener is an officer who is imbued with the type of power. I agree with 2105, and maybe you can help me with that. For the purpose of this title, employee means an officer and an individual who is, among other things, appointed in the civil service by one of the following acting in an official capacity, and then D, an individual who is an employee under this section. So it looks like and means you can be an officer plus an individual who is, as opposed to I wonder if we're misreading and here. I think ultimately it doesn't do a good job of informing who is an officer or not in terms of the law enforcement advisor to look at Title V and the civil service protections that it refers to there. Congress may have had particular reasons to refer back to Title V. I don't think that when they referred to it in 44901 that their intent was to say, well, obviously this refers to the law enforcement advisor. Again, I think that's too thin of a read on which to base a holding that a TSA screener is an officer for the law enforcement advisor. There's no textual definition of traditional law enforcement role, though, is there? So we're taking this from the cases or just our experience in these kinds of cases? Your Honor, when you look at the types of law enforcement officers that courts have found to be within the scope of the law enforcement advisor, again, you're talking about classes of people who I don't think anyone could dispute are investigatory or law enforcement officers and have a specific statute that lays out or regulation or some sort of branch of authority that you can point to that specifically says that they have these types of executing searches, arresting, and the like. TSA screeners don't have those powers. What's your best argument as to why 2105 should be read differently from the way your opponent would like to read it, saying these are all conjunctive? If it wanted to say N, the statute would have said N instead of R. I don't know, Your Honor, when it comes to the distinction. I think ultimately 2105 doesn't answer the question of who is an officer. 2104 says that it has a particular definition of officer. 2105 says officers includes employees for purposes of some of these civil service protections and the like. It's ultimately not helpful to understand who the law enforcement officer for purposes of the law enforcement proviso is, and much like the 11th Circuit said that you don't have to get into the definition of a search, I think it's the cleaner way of doing it is looking at what is under Milbrook the status of the group of people we're talking about, not what it is that they're actually doing, and look to what the basis of their authority is. You have the federal air marshals on one side. Government certainly would not dispute that a federal air marshal is an investigatory or law enforcement officer who's been empowered by the TSA administrator, pursuant to her authority, to conduct searches. That type, certainly TSA screeners, on the other hand, would not. Why aren't you then reading the second half of the sentence out of the statute? That is, you seem to be saying that the term law enforcement investigative or law enforcement officer itself means traditional criminal law enforcement, and that's it plain on the face of the statute. If that's true, then what does the rest of it, in terms of executing searches and seizing evidence and conducting arrests, that would be superfluous if the term law enforcement officer already meant criminal law enforcement. I think under Milbrook, Your Honor, again, we're looking first at status. I think what the rest of the statute does is help us inform as to what categories of officers we're talking about who have that status, and certainly those are, as Your Honor described them, criminal law enforcement officers or criminal law enforcement powers. If we start expanding those to every sort of definition of what could be a search, what could be a seizure, you're opening the door to a lot of other classes of federal employees who would not fit any of those categories. They may be conducting particular activities, but under Milbrook, they don't have the status of a traditional law enforcement officer. Yet Congress went further than saying law enforcement officer. They went on to describe that as an officer who is authorized by law to engage in those particular activities. And again, why would we need that description if the term law enforcement officer itself, or even the term officer as you're asking us to define it, meant only criminal law enforcement? I think that phrase just helps inform, again, what we're talking about. It's not meant to create yet another class of people who may fall into a base in their activities. Certainly under Milbrook, you can't focus on the activity. You have to focus on the status. So the term is investigative or law enforcement. Does that have any meaning? What does the term investigative officer mean that's different than law enforcement officer? If you were to look at, depending on what class of officers you're talking about in each individual case, there may be circumstances under which an officer may have what could be considered a law enforcement function as opposed to an investigatory law function. I don't know exactly what that would be, but it may be that it's just to make it a little bit broader than just traditional arrest powers. There are certainly types of officers who may also be involved in investigating as part of their duties and not necessarily just the traditional sort of arrest, search, and seizure powers. Why isn't this case a bit like, or why can't we use the same case of the D.C. Circuit from 1979 where they talked about Federal National Bureau employees? Is that what it was? Let's see. It was U.S. National Central Bureau officers, and they fell within 2680H. Now, they're not really law enforcement officers in the way you're telling us that they might be. The court said, no, they still fit within 2680H. Why is that not a good case to follow here? Your Honor, I may be unfamiliar with that particular case. I don't think I have it in front of me. It's at 617F2, and I'm quoting from page 764, so it's somewhere before that. Let me see if I've got it, the initial. I don't have it in front of me at the moment, but 617F2, and I was taking it with page 674. Actually, I probably have the case here too as well. But you might want to take a look at that because the point being that they don't fit within the criteria that you're talking about here in order to insulate these TSOs. Again, in 2005, they've been called officers, right? Your Honor, they have various titles, but again, just because an FBI agent isn't called an officer doesn't mean that they are within the statute. So what you're saying is you have persons who are called officers who go through your contents for purposes of security at airports, and you're not going to fly that plane if you don't agree that they go through it, right? Correct. And so you're saying if they do something wrong, significantly egregious, maybe somebody will give discretion to go after them, but they don't have to. Maybe they can be sued for negligence, but we're talking about here if they do something intentional and it's clearly wrong, the Federal Tort Claims Act, you're saying, insulates them. Yes. It's not the only circumstance, Your Honor, in which the FDCA insulates the government from what otherwise someone would be able to bring. Again, the Ferris Doctrine, since 1950, Congress has tried at various times to overturn it, still has not done it, still insulates the government from cases involving armed service members bringing claims for negligence. Ultimately, it's up to Congress to decide what classes of people are or are not within the waiver of sovereign immunity. The Smith case from the Supreme Court from 1991, reinforcing the non-waiver for foreign jurisdiction negligence and intentional torts,  it's not necessary in order to find a waiver in order to create a remedy that Congress has not done. Ultimately, it's up to Congress to decide whether or not that class of people is within the statute and they have decided they are not. Can you give us an understanding of the way that the authorization works for damage awards and settlements? In particular, within the Federal Tort Claims Act, I saw it, Section 3724, it provides for claims for damages caused by investigative or law enforcement officers of the Department of Justice. Seeming to specify that that term, that is investigative or law enforcement officers, if there's going to be an FTC award, it's contemplating that they are DOJ officers. Can you explain where that authorization for settlement for those claims for damages fits into the broader scheme and does that suggest that investigative or law enforcement officer as a term is indeed limited to the criminal law context? I'm not familiar offhand with the statute that Your Honor is citing. Certainly, I have been involved in settling cases involving law enforcement officers in the past. So I apologize that I can't tell you right now how that statute is. I think ultimately it does not form the question here again, though, of who is a law enforcement officer. Different agencies who are not just the Department of Justice have their own law enforcement officers  and the Department of Justice has obviously its own internal procedures for consideration and approval of settlements. That does not, though, to my understanding, inform who is a law enforcement officer under the Federal Tort Claims Act. Does the TRIP Act only apply to individuals who are thought to cause a threat to security or to safety? The TRIP Act, Your Honor, involving the mechanism that was created for complaints? Yes. My understanding, Your Honor, is that it's open for any type of complaint from loss of luggage all the way up to some sort of egregious conduct that one is alleging was conducted by a screener. I looked at the website myself recently to try to understand what it was. Certainly, Court in Vanderklok mentioned it, and it is broad enough to include any sort of complaint one might have as an administrative remedy. Thank you very much. I'm sorry, may I have one more question? What's the government's position, and I'd like to know your colleagues' view, too, on the applicability here of the general rule that waivers of sovereign immunity are construed strictly? We know from our case law that that doesn't apply to the Supreme Court. It doesn't apply to the interpretation of an exception to the broad waiver that's on the face of the FTCA, but here we're dealing with an exception to the exception, that is, an exception to the government and Congress having asserted sovereign immunity again. Is it the government's position that the general rule does apply, or that we're bound as the Supreme Court, and we have said at various points, to just apply a neutral rule in terms of the construction of a sovereign immunity waiver? Your Honor, actually, I would describe it as the exception to the exception to the exception. The government certainly views the baseline as sovereign immunity, and then at what point has Congress made an exception for that? Certainly in the FTCA they have made an exception for negligence, as it applies to most federal employees, and with certain exceptions that are in 2680. 2680H then takes that exception back and reasserts sovereign immunity when it comes to intentional torts, as the Court mentioned earlier, as those particular intentional torts are laid out there. Then one step further, there is a very slight exception to the exception to the exception in the law enforcement proviso of 2680H that applies just to that particular status class of law enforcement officers. Certainly the Supreme Court in Dolan talked about the waiver of sovereign immunity when it comes to the FTCA, but they also said it should be interpreted no more, no less than what the words say. And certainly in this class of status of people, the TSA screeners are not within that exception to the exception to the exception, such that sovereign immunity should be waived for that particular case of an intentional tort involving a TSA screener. Thank you. Thank you very much. I would ask the Court to affirm. Thank you. Thank you. Mr. Thompson. Thank you. I just have a few issues I'd like to address. In the last decade. Let's start with 2105. Yes, sir. Just explain to me, how should I read 2105? Where it says employee means an officer and an individual who is appointed in civil service for one of the following acting in an official capacity, and then it goes down and says an individual who is an employee under this section. I think there are probably two ways you could read it. One way you could read it is you could say an employee includes an officer. It doesn't necessarily mean officer, you know, that all employees are officers, but an employee includes an officer. Another way you could read it is you could read it as in relation to 2104, which is that if you're already an officer under 2104, you're also included in the definition of employee. The way we've looked at it is it means an employee includes officer. So when there's a statutory grant of authority to the TSA administrator to do searching at airports of your person and your belongings, and then that is required to be carried out by an employee, that doesn't necessarily preclude that person from also being an officer, which is what the TSA administrator did here, designated these folks as officers. There's clearly no good answer on what an officer is from the government's perspective. 2104 doesn't do it. There can be people who are officers who aren't really officers, like FBI agents or postal inspectors. I would submit the best way to deal with this question in this case is they are officers, and the statute uses the term any officer. As a matter of fact, in law, they are officers. They were designated as such by the administrator, and any, as the Supreme Court said in Ali, includes of whatever kind, and that is an interpretation of the Federal Tort Claims Act. In fact, in the last decade, the Supreme Court has ruled on a number of Federal Tort Claims Act cases, and several of them are very interesting. Millbrook, Simmons, Dolan, Ali, because in all of those cases, there was a bit of confusion in the lower courts. Some people looking at legislative history. Some people looking, trying to figure out what something meant, and in each case, the court said the language of the statute is clear and unambiguous, and you should apply that language. This case really turns on three words. Any, officer, for the purpose of this subsection, which is the definition they provide just for this subsection, or search, arrest, or seize, or arrest. And those three words show that this provision had some breadth to it. It applies to someone who is an officer of any kind who is empowered by law to execute a search, which is what transportation security officers are. Finally, I'm sorry. What's your position on the applicability of Dolan and the general rule here? The Ninth Circuit in Foster suggested that because we're dealing with the exception, we're back to the default of sovereign immunity having been asserted, that the exception should be construed narrowly. I think we can win either way, because I think the language is so clear and unambiguous in this case, but I do think this is interpreting an exception, and even though Congress is playing with the exception within the exception by adding additional language, I do think this falls within the rule in Dolan that you just read this language straight up. Dolan's important for another reason, and it goes to this floodgates argument. It was an argument that the government made in Dolan. Dolan was a slip-and-fall negligence case based on the Postal Service putting a package on someone's steps, and she fell over it, and the government said, if you let this case go forward, 660 million parcels a day are delivered to 142 million different locations in the United States. There will be chaos in the courts. The Supreme Court said the language is clear, the language is unambiguous, we apply it, and we have ways in our system and our process of weeding out frivolous suits. We'd submit the language is clear and unambiguous here, and we ask the courts to reverse and find that transportation security officers are officers under this statute. Thank you. Thank you, and thank you to both counsel for presenting their arguments. Thank you also, Mr. Thompson, for taking the matter as an amicus. We would ask that the counsel have a transcript prepared of this whole argument and to support the cause, if you would, please. Thank you very much. Very well done.